UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

———————————

No. 13-cv-2430 (RJS)

———————————

JONATHAN MENA,

Plaintiff,

VERSUS

CITY OF NEW YORK, *et al.*,

Defendants.

———————————

OPINION AND ORDER
September 17, 2014

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jonathan Mena, who is currently incarcerated and proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and Correction Officers Sauda Abdul-Malik ("Abdul-Malik"), Benjamin Eason ("Eason"), and Jaquon Pickwood ("Pickwood," and together with the City of New York, Abdul-Malik, and Eason, "Defendants") alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution. Now before the Court is Defendants' motion to dismiss this action in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. Facts

The incidents giving rise to this case occurred while Plaintiff was incarcerated at the Otis Bantum Correctional Center ("O.B.C.C.") on Rikers Island. (Std. Form. Compl. at 2.)[1]

---

[1] The facts are taken from Plaintiff's Complaint and the exhibits attached thereto. (Doc. No. 1 ("Compl.").) Rather than using sequentially numbered paragraphs, Plaintiff's Complaint is divided into two sections, one standard-form "Prisoner Complaint" and one explanatory addendum. To avoid confusion, the Court will, where necessary, refer both to the section of the Complaint ("Std. Form Compl." or "Addendum") and the page number of that section. The Court also considers Plaintiff's factual allegations contained in his opposition to Defendants' motion to dismiss (Doc. No. 22 ("Opp'n")). *See Walker v. Schult*, 717 F.3d 119, 122

Plaintiff alleges that, on September 9, 2012, he engaged in a verbal argument with Abdul-Malik, for which he was given a disciplinary infraction, and was thereafter placed in pre-hearing detention. (Addendum at 1.) According to Plaintiff, at the "[m]alicious[]" request of Abdul-Malik, Eason kept Plaintiff in an undersized cell in the O.B.C.C. intake area instead of transferring him to the "Mhauii" building to serve his pre-hearing detention. (*Id.*) Plaintiff alleges that he was held in the cell for "almost 60 hours without being able to take a shower, brush [his] teeth, change [his] clothes[,] or use the [telep]hone." (*Id.*) Plaintiff also asserts that Eason "deprived" Plaintiff of prescribed pain medication (*i.e.*, ibuprofen), apparently necessitated by the manner in which he had been handcuffed after his argument with Abdul-Malik. (Opp'n at 3–4; *see also id.* Ex. B at 2.)

With respect to the conditions of the intake cell, Plaintiff asserts that he shared with two other individuals a cell that was "very small" and "not capable [of] fit[ting] more than 1 individual." (*See* Std. Form Compl. at 5.) Plaintiff further alleges that "[t]hese 2 individuals were continuously making noise throughout the whole time [in] which [he] was there with them" and that the correction officers "had [the three cell mates] sleeping on a very cold floor which did not allow any of [them] to fall asleep for the whole entire time that [they] were there." (*See* Addendum at 1.) In addition to the cell floor – on which he was "forced to [lie]" – being "very cold" (*see* Std. Form Compl. at 5), the cell itself was "very, very cold" and infested with cockroaches and mice (*see* Opp'n at 3). With respect to his two cell mates, Plaintiff also alleges that these individuals, who were under mental observation, "were constantly yelling [and] screaming" (*see* Opp'n at 2) and "kept doing

---

n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

crazy things like argu[ing] with each other and putting their heads inside of the toilet bowl" (*see* Std. Form Compl. at 5). Plaintiff alleges that he feared for his life "because it was just very clear that the 2 other individuals were not in their right mind . . . , so [he] was also very afraid to close [his] eyes [and] take a short nap because [he] just didn't feel safe." (Addendum at 1.)

Plaintiff alleges that on September 10, 2012, while he was detained in the intake cell, he asked Eason "to please let us all out of such [a] tiny cell because it was just very frustrating to be in there with 2 other individuals, and we simply d[o] not fit." (*Id.*) In response, Eason stated: "Sorry Man, there's just nothing that I could do about that." (*Id.*) Plaintiff asserts that this incident "forced [him] to fall under a very high state of depression . . . ." (Std. Form Compl. at 5.)

Plaintiff alleges that on September 12, 2012, he obtained a copy of the disciplinary charges filed against him by Abdul-Malik for the September 9 incident. (*See* Addendum at 2; *see also* Compl. Ex. A.) The charges included (1) refusal to obey a direct order, (2) disorderly conduct, (3) disrespect for staff, and (4) assault and fighting with staff. (*See* Addendum at 2.) Plaintiff takes issue with all four charges but alleges that the fourth charge is particularly false and malicious. (*See id.*) Specifically, Plaintiff challenges the assertion attributed to Pickwood that Pickwood observed Plaintiff physically resisting and throwing his body against Abdul-Malik. (*See id.*; *see also* Compl. Ex. A.) Plaintiff alleges that a security camera recording reflects that he did not physically assault Abdul-Malik in any way. (*See* Addendum at 2–3.) In addition, Plaintiff claims that Abdul-Malik underwent a fake medical examination to further incriminate Plaintiff and increase Plaintiff's time in solitary confinement. (*Id.*) Plaintiff alleges that he was cleared of the "'false' assault" charge against

2

him (*see id*. at 3), but still spent fifty-one days in solitary confinement from September 11, 2012 to October 31, 2012 (Std. Form Compl. at 3). Plaintiff also asserts that, during this period of solitary confinement, Plaintiff was prevented from seeing the prison's mental health staff. (*Id*.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the Defendants pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Compl.) On December 9, 2013, Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 18–19, ("Mem.").) On January 7, 2014, Plaintiff filed his opposition to the motion. (Opp'n.) On February 4, 2014, Defendants filed a reply memorandum in support of their motion to dismiss. (Doc. No. 24, ("Reply").)

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570. Courts "construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation and internal quotation marks omitted).

## III. DISCUSSION

Although the Complaint does not clearly define Plaintiff's various causes of action, the Court liberally construes it to assert violations of the Eighth and Fourteenth Amendments to the United States Constitution.

### A. Municipal Liability

By naming the City of New York in the caption of his Complaint, Plaintiff appears to be asserting a claim for municipal liability.

"[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Under the standards [set forth by the Supreme Court in] *Monell*, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental

custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). That is, municipal liability requires that a plaintiff prove both "the existence of a municipal policy or custom" *and* a causal connection between the policy and the alleged civil rights violation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).

Plaintiff has not alleged the existence of any official city policy or custom, much less that the deprivation of his rights was caused by such a policy or custom. *See Town of E. Haven*, 691 F.3d at 80. As a result, Plaintiff's claims against the City of New York must be dismissed.

### B. Eighth Amendment

Plaintiff contends that the individual Defendants violated his Eighth Amendment rights by (1) confining him in a very small, cold, rodent-infested cell for sixty hours with two inmates under mental observation, and with no access to showers, toiletries, a change of clothes, or a telephone, and (2) depriving him of (a) pain medication while he was in the intake area and (b) mental health care during his period of solitary confinement.

The Eighth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, proscribes "unnecessary and wonton infliction of pain." *See Estelle v. Gamble*, 429 U.S. 97, 101–102 (1976) (citation omitted); U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). "There are three basic theories pursuant to which inmates customarily bring Eighth Amendment claims: (1) denial of adequate medical care; (2) unconstitutional conditions of confinement unrelated to medical care; and (3) failure to protect." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013). To state an Eighth Amendment claim, a prisoner must allege both that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citations and internal quotation marks omitted). "To constitute deliberate indifference, [t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Id.* (citation and internal quotation marks omitted). "[A] prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). There is "no significant distinction between claims alleging inadequate medical care and those alleging inadequate conditions of confinement. . . . Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard . . . ." *Wilson v. Seiter*, 501 U.S. 294, 303, (1991) (citation and internal quotation marks omitted).

#### 1. Intake Cell Conditions

Plaintiff brings an Eighth Amendment claim based on conditions of confinement, alleging Defendants kept him in a small, cold, rodent-infested cell with two inmates under mental observation and with no access to showers, toiletries, a change of clothes, or a telephone for sixty hours.

To satisfy the objective element of such a claim, the inmate must demonstrate that "the

conditions [of confinement], either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. In the same vein, "conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* (citation and internal quotation marks omitted).

For example, in *Walker*, the Second Circuit found that the plaintiff-appellant plausibly stated an Eighth Amendment violation where he alleged the following:

> [F]or approximately twenty-eight months, he was confined in a cell with five other men, with inadequate space and ventilation, stifling heat in the summer and freezing cold in the winter, unsanitary conditions, including urine and feces splattered on the floor, insufficient cleaning supplies, a mattress too narrow for him to lie on flat, and noisy, crowded conditions that made sleep difficult and placed him at constant risk of violence and serious harm from cellmates.

*See id.* at 126. The Second Circuit noted that the plaintiff-appellant sufficiently alleged conditions that "*perhaps alone and certainly in combination*" amounted to a deprivation of the minimal civilized measure of life's necessities. *Id.* at 126 (emphasis added). In so holding, the Circuit in *Walker* reiterated the following Eighth Amendment principles:

> First, it is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment. . . . Second, sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment. . . . Third, we have long recognized that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment. . . . Further, the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation. . . . Fourth, conditions that place a prisoner at a substantial risk of serious harm from other inmates may constitute cruel and unusual punishment.

*Id.* at 126–28 (citations and internal quotation marks omitted).

Here, the conditions of confinement alleged by Plaintiff existed for sixty hours – a far cry from the twenty-eight-month ordeal endured by the plaintiff-appellant in *Walker*. Nevertheless, the Court concludes that Plaintiff plausibly alleges that the conditions of his confinement in the intake cell constituted a sufficiently serious deprivation of at least one of life's necessities – namely, sleep. Plaintiff explicitly states that the conditions of his cell made it impossible for him or his cellmates to "fall asleep for the whole entire time that [they] were there." (*See* Addendum at 1.) This allegation is hardly conclusory, as Plaintiff asserts that (1) he was "forced to [lie]" on a floor that was "very cold" (*see* Std. Form Compl. at 5); (2) the cell itself was "very, very cold" and infested with cockroaches and mice (*see* Opp'n at 3); and (3) the cell was "very small" and "not capable [of] fit[ting] more than 1 individual," let alone the three who were housed there (*see* Std. Form Compl. at 5). Considered in the aggregate, and taken as true, Plaintiff's allegations plausibly support an inference that the conditions of Plaintiff's confinement were objectively likely to prevent Plaintiff from sleeping for nearly two and a half days. *See Cano v. City of New*

*York*, No. 13-cv-3341 (WFK), 2014 WL 4494169, *7 (E.D.N.Y. Sept. 12, 2014) (denying motion to dismiss where pretrial detainees alleged exposure to a "combination [of conditions including] overcrowded cells, exposure to insects, rodents, extreme temperatures, and unsanitary conditions (including garbage, feces, urine, and vomit), [and] sleep deprivation" for a period of 24 hours).

For the sake of clarity, the Court notes that Plaintiff alleges that the conditions resulted in a complete deprivation of sleep, not interference with sleep. (*See* Addendum at 1.) This distinction is important because of the relatively short amount of time – 60 hours – that Plaintiff spent in the intake cell. While the *Walker* panel held that "conditions that prevent sleep" may violate the Constitution, *id.* at 126, it allowed the plaintiff-appellant's claim to go forward even though the alleged conditions merely "made sleep difficult," presumably, in part, because the plaintiff-appellant endured this treatment for 28 long months. Here, had Plaintiff alleged that the conditions only *interfered* with his ability to sleep or "made sleep difficult" for a period of sixty hours, this might be a much closer case. However, the Court heeds the Second Circuit's "reaffirm[ation] that each prisoner complaint alleging a constitutional violation must be carefully analyzed in light of the particular facts contained therein," *Walker*, 717 F.3d. at 130, and concludes that Plaintiff's Complaint passes muster as he has alleged facts that, taken as true, support a plausible inference that he was completely deprived of sleep for sixty hours.

With respect to Plaintiff's other allegations regarding the conditions of confinement – *i.e.*, that he was confined for sixty hours "without being able to take a shower, brush [his] teeth, [or] change [his] clothes" (Addendum at 1) – the law is clear that the deprivation of toiletries or hygienic materials may pose an unreasonable risk to human health in certain circumstances. *See Walker*, 717 F.3d at 127. Although the Court considers allegations regarding conditions of confinement in the aggregate to determine whether they rise to the level of a constitutional violation, such a violation may be found "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id.* at 125. The Court finds, as a matter of law, that these hygiene-based allegations are minor and do not have such a "mutually enforcing effect." *Id.*; *compare Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (explaining that access to only one roll of toilet paper for approximately two weeks does not pose an obvious risk to an inmate's health or safety), *and Dolberry v. Levine*, 567 F. Supp. 2d 413, 417 (W.D.N.Y. 2008) (explaining that denying a prisoner showers for several weeks does not rise to the level of a constitutional violation), *with Walker*, 717 F.3d. at 127 ("The failure to regularly provide prisoners with . . . toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living conditions." (citations and internal quotations marks omitted)).

Turning to the second prong of Plaintiff's Eighth Amendment claim, the Court finds that Plaintiff has alleged sufficient facts to support an inference that Defendant Eason "kn[ew] of, and disregard[ed], an excessive risk to [Plaintiff's] health or safety." *Walker*, 717 F.3d at 125 (citation and internal quotation marks omitted). Specifically, Plaintiff alleges that he complained to Eason about the "tiny cell" and the fact that it "was just very frustrating to be in there with 2 other individuals, and [they] simply d[id] not fit." (*See* Addendum at 1.) At this stage of the litigation, it is enough that Plaintiff alleged that Eason was present to

observe the conditions of the intake cell, and that Plaintiff pointed them out to him. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (asserting that defendant prison guards "made daily rounds of SHU" was sufficient to allege that defendants had actual knowledge of obvious inhumane conditions). Plaintiff's allegations about Abdul-Malik suggest that she played the role of instigator because she requested that Plaintiff be held at the O.B.C.C. intake unit. (*See* Addendum at 1.) However, Plaintiff does not allege that he complained to Abdul-Malik or any of the other named Defendants, or that Abdul-Malik or any of the other named Defendants were even aware of the conditions or duration of his confinement. There is no allegation that any Defendant besides Eason was made "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837. Therefore, Plaintiff has pleaded the subjective prong of this claim only against Eason.

### 2. Inadequate Medical Care

Plaintiff further contends that Defendants violated his Eighth Amendment rights by providing him with inadequate medical care when they deprived him of pain medication while he was in the intake cell and denied him an opportunity to see the mental health staff during his period of solitary confinement.

To satisfy the objective element of such an Eighth Amendment claim, a prisoner must show that the deprivation was "sufficiently serious" such that the medical condition might have produced "death, degeneration, or extreme pain." *Jones v. Vives*, 523 F. App'x 48, 49 (2d Cir. 2013) (summary order) (citation and internal quotation marks omitted); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (citation and internal quotation marks omitted)). As referenced above, to satisfy the subjective element, a prisoner must show that the prison official acted with a "sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Walker*, 717 F.3d at 125.

With respect to the deprivation of pain medication, Plaintiff fails to satisfy the objective element of an Eighth Amendment claim because he has not plausibly alleged that the handcuffing injury was serious enough to produce "death, degeneration, or extreme pain." *See Jones*, 523 F. App'x at 49 (citation and internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009) ("[T]he Eighth Amendment's prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (citation and internal quotation marks omitted)). Furthermore, from a subjective perspective, generic complaints about wrist pain from handcuffing, for which ibuprofen was the prescribed treatment, is too run-of-the-mill to put Defendants on notice that there was an "obvious and noticeable" risk to Plaintiff's health. *See Farmer*, 511 U.S. at 842.

With respect to the denial of an opportunity to see mental health staff during solitary confinement, the law is clear that "[t]he Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners, which includes needs for mental health care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citations and internal quotation marks omitted). Plaintiff refers to himself as "a mental health patient [who] was not even supposed to be kept at O.B.C.C. after being cleared by the Mental Health Dep[artment]" because, according to him, he was supposed to

be sent to "Mhauii [,which is] the proper facility for inmates under mental health care . . . ." (Opp'n at 3.) In his sole allegation concerning his mental health care while he was in solitary confinement, Plaintiff states that he "was denied [an opportunity] to see the 'mental health' staff for the whole time that [he] was at the 'solitary confinement'" and that he "was under a lot of stress and depression because of this situation." (Std. Form Compl. at 3.) Plaintiff's only other allegations regarding his mental health consist of (1) his self-characterization that he was a mental health patient (Opp'n at 3), and (2) his suffering from depression (Std. Form Compl. at 5). Even taken as true, Plaintiff's vague allegations cannot meet the objective-prong threshold for an Eighth Amendment violation. *See Selah v. N.Y.S. DOCS Comm'r*, No. 04-cv-3273 (DC), 2006 WL 2051402, at *5 (S.D.N.Y. July 25, 2006) ("[The plaintiff's] conclusory allegation that he suffers from some kind of mental illnesses . . . is insufficient to rise to the level of a constitutional violation for failure to provide medical care. . . . [T]here is no allegation, as required, of pain, discomfort or risk to health, nor is there . . . support for the claim of mental illness in the form of medical evidence, such as a physician's diagnosis." (citations and internal quotation marks omitted)). Moreover, Plaintiff has not alleged that Defendants were aware of his mental health needs, or even that they were the ones who supervised him while he was in solitary confinement. Thus, Plaintiff fails to satisfy the subjective element of an Eighth Amendment claim as well. *See Spavone*, 719 F.3d at 138 (requiring that a defendant be aware of the risk of harm that a deprivation of mental health services would cause).

### C. Fourteenth Amendment

Plaintiff also contends that Defendants violated his due process rights under the Fourteenth Amendment by (1) falsely accusing him of misconduct, and (2) causing him to be held for fifty-one days in solitary confinement.

"To present a due process claim [under the Fourteenth Amendment], a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and internal quotation marks omitted).

#### 1. False Accusations

Plaintiff contends that Defendants violated his due process rights under the Fourteenth Amendment by falsely accusing him of "assault and fighting with staff." (Addendum at 3; Std. Form Compl. at 5.) In the Second Circuit, it is well-established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Indeed, "[t]he inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2008) (summary order). Because Plaintiff only alleges that Abdul-Malik and Pickwood made a false accusation against him, and did not allege retaliation or a lack of procedural due process, Plaintiff has failed to state a constitutional claim against Defendants arising out of the allegedly false charges.

#### 2. Solitary Confinement

"A prisoner's liberty interest is implicated by prison discipline, such as solitary confinement[,] only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d

60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Borcsok v. Early*, 299 F. App'x. 76, 78 (2d Cir. 2008) (summary order) ("[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (citations and internal quotation marks omitted)). Both the duration and conditions of confinement are important factors in determining whether such confinement is atypical and significant. *See Palmer*, 364 F.3d at 64 ("Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." (citations and internal quotation marks omitted)).

With respect to duration, the Second Circuit has held that under "'normal' [solitary or] SHU confinement, . . . a 101–day confinement does not meet the *Sandin* standard of atypicality." *Ortiz*, 380 F.3d at 654. However, the Second Circuit has made clear that "under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest." *Id.* (citing *Palmer*, 364 F.3d at 65). Although the Second Circuit panel in *Ortiz* did not define "normal," it noted that "ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." *Id.* at 655 (citations omitted).

Here, Plaintiff merely alleges that, as a result of the disciplinary charges filed against him, he was placed in solitary confinement for fifty-one days and was prevented from seeing the prison's mental health staff during his time in solitary confinement. Plaintiff's Complaint is completely devoid of any other allegation concerning the conditions of his solitary confinement. Accordingly, Plaintiff has failed to allege that the fifty-one-day SHU sentence imposed on him was, under the circumstances, any more serious than the "normal" conditions of solitary confinement addressed and upheld in *Ortiz*. Moreover, Plaintiff fails to allege that the prison imposed the SHU sentence without providing sufficient process. As a result, Plaintiff's due process claims must be dismissed.

IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in part and DENIES it in part. With respect to the City of New York, Abdul-Malik, and Pickwood, the motion to dismiss is GRANTED in full. With respect to Eason, the motion to dismiss is GRANTED in part and DENIED in part. Eason shall answer Plaintiff's Complaint no later than October 3, 2014.

The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 18.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 17, 2014
New York, New York

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-18-14
```

9

* * *

Plaintiff is proceeding pro se.

Defendants are represented by Omar Javed Siddiqi and Ryan Glenn Shaffer, New York City Law Department, 100 Church Street, New York, New York 10007.

<u>A copy of this Memorandum and Order was mailed</u> to:

Jonathan Mena
13–A–2620
Attica Correctional Facility
639 Exchange Street
Attica, NY 14011